IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:14-CV-192

| | |
|---|---|
| DIANE G. FRALEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**BEFORE THE COURT** are cross-motions for summary judgment filed by Diane G. Fraley (Doc. 11) and the Commissioner (Doc. 13). The Court adopts the facts as stated in the Administrative Law Judge's opinion and will discuss the evidence, when necessary, in the body of the opinion.

**I.  BACKGROUND OF THE LAW**

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.[1] 20 C.F.R. §§ 404.1520(a) and 416.920(a). If it is determined that a claimant is or is not disabled at one step, the SSA or Administrative Law Judge will issue a decision without proceeding to the next step in the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three has

---

[1] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if claimant can adjust to perform other work, the SSA will find that claimant is not disabled at the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

1

been completed, but before step four is begun, in order to determine what level of physical and mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing a claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir.1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note

that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III.   ANALYSIS

### A.   New Evidence

This is a case where new evidence has been specifically incorporated into the record by the Appeals Council. Accordingly, this new evidence is part of the record on appeal. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011). The Court notes that the Appeals Council did not explain the basis for its decision; however, it is not required to do so. *Id.* at 702. Certainly "an express analysis of the Appeal's Council's determination would [be] helpful for purposes of judicial review." *Id.* at 706 (quoting *Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2007)). However, judicial review is still possible "as long as the record provides 'an adequate explanation of [the Commissioner's] decision.'" *Id.* (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983)). When a court "cannot determine, from review of the record as a whole, if substantial evidence supports the denial of benefits" it must reverse and remand. *Id.* at 702.

In *Meyer*, the ALJ denied the disability claim and stated that the claimant had failed to provide an opinion from his treating physician. *Id.* at 703. The claimant then submitted a letter from his treating physician to the Appeals Council. *Id.* at 703-04. However, the Appeals Council did not change the ALJ's decision. *Id.* The Fourth Circuit held that remand was appropriate because the ALJ's decision suggested that an "evidentiary gap played a role in its

3

decision." *Id*. The Fourth Circuit stated that the record was not "one-sided" and that evidence submitted needed to be reconciled by the ALJ because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Id.*

In this case, Plaintiff submitted a letter from Dr. Friedland to the Appeals Council. The letter indicates that Dr. Friedland began seeing Plaintiff in March of 2012. (Tr. 405). It states that "[s]he was diagnosed with fibromyalgia 7 years ago" and that "[a]s a result of the increasing pain from her fibromyalgia and increasing fatigue from fibromyalgia, she has been unable to work at any job since August 2011." (*Id.*). Friedland continues that since he has treated her "her pain has only intensified requiring significant amounts of narcotic medication." (*Id.*). Friedland also states that "[h]er pain involves multiple trigger points over her body, including in her arms, back, and legs. Staying in one position causes significant multiple spasms and stiffness, as well as deterioration of function." (*Id.*). Regarding her treatment, he states that:

> The treatment at this point has escalated to narcotic pain medicines. She takes OxyCotin 20 mg in an extended release form every 8 hours through the day, and also requires immediate release oxycodone 15 mg four times a day. The pain medicines do affect energy, judgement, attention ability and memory.

(*Id.*). Friedland concludes by stating "I feel that Mrs. Fraley remains totally disabled." (*Id.*).[2] Plaintiff argues that this letter justifies remand because it "directly conflicts with the ALJ's finding as to Fraley's residual functional capacity as well as the ALJ stating Fraley's fibromyalgia is not a severe medically determinable impairment." (Doc. 12, at 6-7).

Regarding Plaintiff's allegations of fibromyalgia, the ALJ stated that:

> The claimant has reported fibromyalgia; however, there is no substantial proof of trigger points to verify the existence of fibromyalgia. Indeed, treating sources have prescribed medication

---

[2] Dr. Friedland's opinion regarding whether Plaintiff is disabled under the Social Security Act is not a "medical opinion" and is not given any special significance. 20 C.F.R. § 404.1527(d)(3).

> for her complaints of fibromyalgia pain; however, these sources have also documented normal range of motion throughout with no evidence of tender points or edema. In addition, these sources have repeatedly noted her pain is well controlled with this prescribed medication. Dr. Mills, the consultative examiner, noted slight tenderness in the spine; however, he noted range of motion was normal throughout, straight leg raising was negative and the claimant was able to stand on one foot, toe walk, heel walk, stoop and tandem walk. Therefore, I conclude that the overall clinical findings do not demonstrate the presence of fibromyalgia, much less that this condition, if present, imposes any work related limitations on her capacity to do work.

(Tr. 20).

The Commissioner argues that remand is inappropriate because Friedland's letter adds nothing that could change the underlying opinion. The Court agrees. The ALJ found that there was no substantial proof of trigger points to verify the existence of fibromyalgia and the letter adds nothing to contradict this aside from stating without providing any documentation that there are "multiple trigger points over her body." The Commissioner argues, correctly, that aside from prescribing narcotic pain medications, there are no objective criteria such as examination findings that justify Plaintiff's diagnosis – something that remains true despite the existence of the letter. None of Dr. Friedland's notes indicate that he conducted trigger point testing.

Further, Dr. Friedman's treatment notes do not substantiate his statements about the narcotics' effect on Plaintiff's ability to work. (Tr. 393) ("From fibromyalgia standpoint, she is doing well."); (Tr. 375) ("She continues to have fibromyalgia pain, which is all over her body but she is doing a good job walking more consistently, almost on a daily basis and feels that this helps ease her pain."); (Tr. 386, 400) ("IMPRESSION: Fibromyalgia, maintained on OxyContin and oxycodone."). Neither is his statement regarding narcotics substantiated elsewhere in the medical record. (Tr. 21). Dr. Friedman's letter also indicates that treatment has *escalated* to narcotic pain medicine; however, the record reveals that Dr. Friedman began prescribing Plaintiff narcotics at

5

the very beginning of his treatment of Plaintiff in March of 2012. (Tr. 378). Accordingly, Friedman's letter adds nothing that justifies remanding this case for further consideration.

**B.     Plaintiff Failed to Meet Her Burden to Prove that She Has Fibromyalgia.**

SSR 12-2p explains how the SSA determines if a person has a medically determinable impairment ("MDI") of fibromyalgia. SSR 12-2p states that a person can establish that he or she has fibromyalgia only by providing evidence from an acceptable medical source, meaning a licensed physician. It further provides that "[w]e cannot rely on the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis . . . ." SRR 12-2p. Further, SSR 12-2p states that "before we find that a person with an MDI of [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id.*

SSR 12-2p also details specific criteria that can establish a MDI of fibromyalgia. Specifically, the SSA "will find that a person has an MDI of [fibromyalgia] if the physician diagnosed [fibromyalgia] and provides the evidence we describe in section II.A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." *Id.*

To prove fibromyalgia under section II.A., a plaintiff must all of the following: (1) a history of widespread pain; (2) at least eleven tender points on physical examination; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." *Id.* In testing tender points, "the physician should perform digital palpation." *Id.*

To prove fibromyalgia under section II.B., a plaintiff must have all of the following criteria: (1) "a history of widespread pain"; (2) "repeated manifestations of six or more [fibromyalgia] symptoms, signs,[3] or co-occurring conditions,[4] especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."

Plaintiff argues that the ALJ solely relied on the II.A. criteria in determining that she did not have a MDI of fibromyalgia. It is clear that the ALJ discussed the II.A. criteria when referencing tender points. (Tr. 21). The Commissioner argues, correctly, that Plaintiff has only made a conclusory allegation that the letter itself establishes her fibromyalgia as a MDI. Plaintiff has not even attempted to state how the letter, which is less than a page, can establish the entirety of the II.B. criteria. As stated above, the existence of the letter does not warrant remand because the Commissioner's decision remains adequately supported.[5] As a further matter, the Court finds

---

[3] Note four of SSR 12-2p states that:

> These "somatic symptoms" include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms.

[4] Co-occuring conditions can include

> [A]nxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome

SSR 12-2p, n.5.

[5] Relevant to this finding is the fact that the Commissioner found no severe mental impairments; the Claimant herself denied mental issues and that she has reported no problems with attention, concentration, persistence, or pace; that multiple examinations detail that she has full range of motion; and there has been no evidence of tender points or edema. (Tr. 18-21).

that the existence of the letter does not warrant remand for the ALJ's supposed failure to consider the II.B. criteria. Plaintiff's statements about her pain or other symptoms cannot establish a medically determinable impairment; rather, there must be acceptable medical signs and laboratory findings. 20 C.F.R. 404.1529(a). There is substantial evidence for the ALJ's original determination that "the overall clinical findings do not demonstrate the presence of fibromyalgia." (Tr. 20). Moreover, even if the ALJ erred regarding whether fibromyalgia was a medically determinable impairment, there is ample support in the record to substantiate his conclusion that "her pain is controlled" by her medication and that "this condition, if present, [does not] impose[] any work related limitations." (Tr. 20) *See* (Tr. 304, 6/02/11, "currently controlled" by medication); (Tr. 310, 9/20/10 "currently controlled" by medication); (Tr. 312, 5/14/10 "currently controlled" by mediation); (Tr. 314, 02/08/10, "doing well on [medication] in regards to her fibromyalgia"); (Tr. 316, 11/09/09 "stable" on medication); (Tr. 318, 10/02/09 "pain is controlled on the current regimen"); (Tr. 333, 8/2/11 "She reports the rx are 'right' and reports she is able to function with the rx."); (Tr. 354, 10/27/11 "symptoms have significantly improved" and "pain has been better controlled" however "symptoms are chronic"); (Tr. 375, 5/29/12 continues to have fibromyalgia "but she is doing a good job walking more consistently, almost on a daily basis and feels that this helps ease her pain."); (Tr. 386, 2/15/13 "maintained" on medication); (Tr. 393, 11/14/12 "From fibromyalgia standpoint, she is doing well except for her left hip."); (Tr. 400, 5/13/13 "maintained" on medication, noted that patient went "on trip to Atlanta" and was "on her feet for hours a day"); *but see* (Tr. 373, 1/26/12 "Her progress is downhill. She has fibromyalgia with pain throughout her body" described as "fireballs."). The ALJ's decision is further buttressed by his adverse credibility finding which has not been challenged, *see* (Tr. 21-22), after which he stated "[t]hese inconsistencies do not enhance the claimant's credibility and make it difficult to

rely on testimony and reports of record in reaching a conclusion of disability in this case[,]" (Tr. 22). Accordingly, the Court finds that remand is unnecessary on this issue and any failure to specifically mention the II.B. criteria is harmless.

### C. Remand is Not Necessary Due to The ALJ's Failure to Mention the Long Term Disability Insurance Carrier Finding that She Was Disabled under the terms of the Insurance Policy

Decisions by other governmental or nongovernmental agencies indicating that a claimant is disabled are not binding on the SSA. 20 C.F.R. 1504. SSR 06-03p states that:

> However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.
>
> . . .
>
> Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, we are not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. **However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.**

The Court finds Chief Judge Whitney's explication of Western District precedent persuasive:

> Western District of North Carolina ("W.D.N.C.") cases have held that, in the absence of any other evidence qualifying for analysis under SSR 06–03p, a statement by the ALJ that he considered opinion evidence in accordance with SSR 06–03p is a sufficiently adequate consideration of the prior [agency] determination.

*Gabriel v. Colvin*, No. 1:14-CV-270-FDW, 2015 WL 4591591, at *3 (W.D.N.C. July 29, 2015) (discussing a prior Medicaid determination). In this case, the Court finds that the ALJ

considered opinion evidence in accordance with SSR 06-03. (Tr. 18). Moreover, there was no written explanation of the decision that could inform the ALJ's analysis in any meaningful manner. *King v. Astrue*, No. 2:09-2358-RSC, 2010 WL 3430781, at *6 (D.S.C. Aug. 31, 2010); *Wrightson v. Colvin*, No. 2:-13-CV-59-BO, 2014 WL 5471908, at *2 (E.D.N.C. Oct. 22, 2014) ("The full decision also does not cite to specific medical evidence, thus the Court finds that consideration of the full decision would not affect the ALJ's analysis."); *see* (Tr. 183) ("Based on the information received, it appears that you have met the group policy's definition of Total Disability."). Moreover, the Commissioner correctly argues that the standards that govern the long-term disability policy and the SSA are sufficiently different that a review of the determination would not inform the ALJ of how he is to apply the regulations in this instance. *See* (Tr. 183-184) ("[B]enefits are payable for a maximum of 24 months if a disability occurs as a result of a *self-reported disorder*" however, noting that consideration is given to medical records). Accordingly, the Court finds that the ALJ's purported failure to specifically identify the receipt of long-term disability benefits and explain what weight to give it is harmless error.

**IT IS, THEREFORE, ORDERED THAT**

    (1) The Commissioner's Motion for Summary Judgment (Doc. 13) is **GRANTED**;

    (2) Fraley's Motion for Summary Judgment (Doc. 11) is **DENIED**;

    (3) The final decision of the Commissioner is **AFFIRMED**; and

    (4) The Clerk is directed to **CLOSE** the case and enter judgment in accordance with Rule 58.

Signed: August 20, 2015

Richard L. Voorhees
United States District Judge